Stephen A. **BURKE**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 10–99–260–CR, 10–99–261–CR.

Court of Appeals of Texas,
Waco.

Aug. 30, 2000.

James H. Kreimeyer, Belton, for appellant.

Riley J. Simpson, Dist. Atty. for Coryell County, David A. Castillo, Asst. Dist. Atty. for Coryell County, Gatesville, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## O P I N I O N

BILL VANCE, Justice.

A jury found Stephen Burke guilty of aggravated sexual assault and assessed punishment of thirty years' incarceration and a $1,000 fine. The same jury found Burke guilty of possession of child pornography and set his punishment for this offense at ten years' incarceration and a $1,000 fine. We uphold the trial court's denial of Burke's motion to suppress evidence seized from his house under a search warrant because the probable-cause affidavit sufficiently supported the inference that he possessed illegal items at his house at the time the warrant was issued. We also find the evidence supports a finding that the aggravated sexual assault offense occurred within the dates alleged in the indictment—thus the State's failure to allege in the indictment that the offense occurred "on or about" a date is not fatal to the conviction. Having considered, and rejected, both issues Burke presents on appeal, we will affirm his convictions.

### BACKGROUND

On November 19, 1998, T.H., a fifteen-year-old girl, K.H., a twelve-year-old girl, and the girls' mother met with Lori Hix, an investigator with the Copperas Cove Police Department. During the interviews, T.H. and K.H. told Hix that Burke had assaulted K.H. and that he had shown them child pornography. Based on her conversation with T.H. and K.H., Hix obtained a search warrant authorizing a search of Burke's home for child pornography. During the execution of the warrant, child pornography was discovered on Burke's computer. At his trial, printed copies of the pornography were introduced into evidence, and both T.H. and K.H. testified, resulting in Burke's convictions and these appeals.

### VALIDITY OF SEARCH WARRANT

In his first complaint, Burke claims that the trial court erred when it refused to suppress the evidence seized from his house during the execution of the search warrant. He argues that the affidavit on which the warrant was issued does not establish probable cause to believe that child pornography could be found at his house at the time that the warrant was issued.

### Showing probable cause for a search warrant

■ A request for a warrant must be supported by a sworn affidavit that sets out facts sufficient to support a finding of probable cause. TEX.CODE CRIM. PROC. ANN. art. 18.01(b) (Vernon Supp.2000). Among other requirements, the facts asserted in the affidavit must be sufficient to show "that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place or thing to be searched." *Id.* (c)(3); *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim.App.1996). The allegations are sufficient if they would justify a conclusion that the items to be searched for are probably on the premises. *Ramos v. State*, 934 S.W.2d 358, 363 (Tex.Crim.App.1996). Moreover, the facts relied on must not have become "stale" by the time the warrant is issued. *Rowell v. State*, 14 S.W.3d 806, 809–10 (Tex.App.—Houston [1st Dist.] 2000, no pet. h.); *Wachter v. State*, 961 S.W.2d 598, 600 (Tex.App.—San Antonio 1997, pet. ref'd). That is, the affidavit must show that the act or event upon which probable cause is based occurred within a reasonable time prior to the making of the affidavit. *Howlett v. State*, 946 S.W.2d 870, 879 (Tex.App.—Eastland 1997), *rev'd on other grounds*, 994 S.W.2d 663 (Tex.Crim.App.1999) (citing *Gonzales*

*v. State,* 577 S.W.2d 226 (Tex.Crim.App. 1979)).

### Our review of probable cause determinations

■ When we are called upon to review a trial court's decision on a motion to suppress evidence based on a claim that the search warrant was not supported by probable cause, we apply the "bifurcated" standard of review articulated in *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). *Wynn v. State,* 996 S.W.2d 324, 326–27 (Tex.App.—Fort Worth 1999, no pet.); *Wachter,* 961 S.W.2d at 600. Thus, we give almost total deference to the trial court's determination of historical facts that depend on credibility choices, but review its application of the law of probable cause *de novo. Id.* Because probable cause to support the issuance of the warrant is determined from the "four corners" of the affidavit alone, there are no credibility choices to be made by the trial court in examining the sufficiency of an affidavit to establish probable cause. *Wynn,* 996 S.W.2d at 326–27; *see Massey,* 933 S.W.2d at 148. Thus, we review the court's ruling on the motion to suppress *de novo. Wynn,* 996 S.W.2d at 326; *Wachter,* 961 S.W.2d at 600. That is, we apply the same standard that the trial court applied when it evaluated the magistrate's decision to issue the search warrant on the basis of the challenged affidavit.

■ That standard requires us to examine the totality of the circumstances when considering whether the facts alleged in the affidavit establish probable cause. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Ramos,* 934 S.W.2d at 362–63. The issuing magistrate is entitled to draw reasonable inferences from the facts stated in the affidavit, and we, as a reviewing court, are required to accord those inferences great deference. *Ramos,* 934 S.W.2d at 363; *Wynn,* 996 S.W.2d at 326–27. If "the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more," and we should find the affidavit sufficient. *See Gates,* 462 U.S. at 236, 103 S.Ct. at 2331 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)).

### The affidavit in support of a search warrant

In the affidavit supporting her request for a search warrant, dated November 23, 1998, Hix relayed the information from her November 19 interview of T.H. and K.H., stating,[1] in part:

6. [T.H.] began to tell the Affiant that on 11/09/98, Stephen dropped off all the other children but didn't drop her off. Instead Burke drove to the city park. [T.H.] stated that Burke pulled over and showed her a small box. Burke opened the box and removed a necklace. [T.H.] stated that she hugged Burke for giving her the necklace and he then put the necklace on her. [T.H.] stated that after Burke put the necklace on he kissed her on the back of the neck. [T.H.] stated that Burke told her that he was not joking. [T.H.] pushed him away and Burke drove her back to school.

7. [T.H.] told the Affiant that Burke keeps nude photos on his dark gray labtop computer that is hooked up the computer in the house, 607 Traci Drive. [T.H.] told the Affiant that Burke showed her some photos that Burke had made. [T.H.] stated that Burke showed her three (3) photos of nude females with her head pasted on them. [T.H.] stated that Burke told her that he bets thats what her body looked like naked. [T.H.] stated that Burke told her that he had the pictures hidden so that he can look at them and think of her. [T.H.] told the Affiant that Burke has shown her a movie of the Internet of people having sex.

---

1. The excerpts from the affidavit are presented verbatim, including errors.

8. [T.H.] told the Affiant that she spoke to her little sister, [K.H.], and discovered that Burke had touched her genitals.

9. At approximately 1030 hours, Affiant met with [K.H.] and [her mother] at the Police Department. Affiant asked [K.H.] to tell her about Burke. [K.H.] stated that she liked Burke until he did something bad to her she didn't like. [K.H.] stated that she was playing games on the computer at the Burke's house and Stephen was present in the room. [K.H.] stated that Stephen began reading her nasty stories and showing her pictures of naked people having sex. [K.H.] told Affiant that as Burke read the stories he began to rub her legs and then worked his hands over the private areas. [K.H.] stated that she moved so he would stop. Burke then showed her a picture of a girl, 4 to 5 years of age. The picture was of a blonde little girl with her leg wide open. Burke then showed her a picture of two nude females getting on a bed and told [K.H.] that it reminded him of her and [T.H.]. [K.H.] then stated that Burke put his hand under her shorts and panties and then put his finger inside her vagina. Burke continued to feel the rest of her body. [K.H.] stated that Burke would pull his hand out and lick his finger and then place his hand back under her panties and inside her part, vagina.

10. [K.H.] stated that the above offense happened between September 1997 and Halloween 1997.

### Is the affidavit sufficient to show probable cause?

Burke argues that the affidavit is insufficient because the only facts that would tend to show that he possessed child pornography involved an incident that occurred in September or October 1997, more than a year before the warrant was issued. He argues that this information was stale.

However, the affidavit states that T.H. told Hix she had seen Burke as recently as ten days before the interview. Also, according to the information in the affidavit supplied by T.H., "Burke keeps nude photos on his dark gray laptop computer," a statement that indicates the continuing and recent presence of pornography.

Furthermore, the affidavit recites that among the photos T.H. said Burke had were three pictures with T.H.'s head "pasted" onto a nude body. Burke does not challenge whether it would be reasonable for the magistrate to conclude that the bodies on which T.H.'s head were pasted were those of a child. The affidavit indicates that Burke thought the bodies were similar to T.H.'s body, *i.e.*, similar to a fifteen-year-old girl's development. Thus, although not clearly stated in the affidavit, we believe that the magistrate could have reasonably inferred that the photos on which T.H.'s head was superimposed were actually photos of the nude bodies of children. Additionally, given Burke's other comments about the photo, as related by T.H. through Hix's affidavit, the magistrate could have reasonably inferred that the pictures contained lewd exhibition of the genitals of the children. *See Carmell v. State*, 963 S.W.2d 833, 837 (Tex.App.—Fort Worth 1998, pet. ref'd) (finding the area that becomes covered with hair at the time of puberty to be anatomically part of the female genitalia), *rev'd on other grounds*, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000). We conclude, then, that the magistrate could have reasonably inferred, based on T.H.'s statements repeated in the affidavit, that Burke had child pornography on his computer in the fall of 1998. *See* TEX. PEN.CODE ANN. §§ 43.25(a)(2), 43.26 (Vernon Supp.2000);[2]

2. The definition of "sexual conduct" in section 43.25(a)(2) was amended by the Legislature in 1999, effective after Burke's arrest.

Act of May 29, 1999, 76th Leg., R.S., ch. 1415, § 22(b), 1999 Tex. Gen. Laws 4831, 4841 (current version at TEX. PEN.CODE ANN.

*Gates,* 462 U.S. at 236, 103 S.Ct. at 2331; *Ramos,* 934 S.W.2d at 362–63; *Wynn,* 996 S.W.2d at 326–27.

The facts stated in the affidavit supporting the issuance of the search warrant were not stale. The trial court properly rejected the motion to suppress the evidence seized under the warrant. We conclude that Burke's first issue is without merit.

### DATE OF THE AGGRAVATED SEXUAL ASSAULT

■ In an attack directed only to his conviction for aggravated sexual assault, Burke claims that there is a fatal variance between the allegations in the indictment and the evidence at trial. The State charged Burke with assaulting K.H. "between the 1st day of September, 1997 and the 1st day of November, 1997[.]" Burke argues that the State was required to prove that the offense took place between these two dates because it did not allege that it occurred "on or about" those dates. *C.f. Mireles v. State,* 901 S.W.2d 458, 459 (Tex.Crim.App.1995) (holding that when the State alleges that the date of the offense was "on or about" a certain date, it is only required to show that the offense occurred before the indictment was handed down but within the statute of limitations period). According to Burke, the evidence is insufficient to meet this requirement · because K.H. ultimately testified that she was uncertain as to which month the assault took place.

■ Burke's complaint is without merit because the evidence is sufficient to sustain a finding that the assault took place within the date range alleged in the indict-

§ 43.25(a)(2) (Vernon Supp.2000)). The amendment added to the definition of sexual conduct applicable to child pornography. We rely only on the definition that applied at the time the warrant was issued.

**3.** Although Burke uses the phrase "fatal variance" in his statement of the issue, his argument revolves around the lack of evidence to support a finding consistent with the indict-

ment.[3] In determining whether the evidence is legally sufficient to support the verdict, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lane v. State,* 933 S.W.2d 504, 507 (Tex.Crim.App. 1996) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)).

K.H. testified that the assault took place in the "fall" of 1997. She was allowed to read to the jury a statement she gave the police, in which she said that the assault occurred at the "end of September, early October." Additionally, Burke's confession was read to the jury. In his confession, he admitted to assaulting K.H. "sometime before Halloween" in 1997. Although K.H. vacillated on the date in her testimony, at first asserting that it occurred in November 1997, then in September 1997, and finally admitting that she was not sure of the month, her testimony, her statement that was read to the jury, and Burke's confession were sufficient to allow a rational trier of fact to find that the assault occurred between the 1st day of September, 1997 and the 1st day of November, 1997. *Id.* Thus, the evidence is legally sufficient to sustain Burke's conviction, even without an "on or about" allegation.

Burke's second issue is meritless.

### CONCLUSION

We have found that the trial court correctly denied Burke's motion to suppress the evidence and that the evidence is legally sufficient to sustain his conviction for aggravated sexual assault under the alle-

ment. Thus, we treat his compliant as one of legally insufficient evidence. Even if we were to analyze his issue under the fatal variance doctrine, the result would be the same because there is no variance between the allegations in the indictment and the proof at trial. *See Rojas v. State,* 986 S.W.2d 241, 246 (Tex. Crim.App.1998).

gations of the indictment. Thus, having considered and rejected each of Burke's complaints, we affirm the judgments.